IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMER WILLIAM-WHITFIELD, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-4544 |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH LEHIGH COUNTY PRISON, JUDGE ROBERT L. STEINBERG, and LEHIGH COUNTY P.D., | : : : : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                                        March 4, 2022

The *pro se* plaintiff, who is proceeding *in forma pauperis* and is currently defending against numerous criminal charges, including attempted murder, in Philadelphia, has attempted to amend his original complaint to include plausible claims for constitutional violations under 42 U.S.C. § 1983. In his amended complaint, he now appears to assert claims against (1) a Court of Common Pleas Judge and a magisterial district judge who presided over portions of prior criminal cases prosecuted in another county, (2) two public defenders who appear to have represented him in those criminal cases and an assistant district attorney who prosecuted him, (3) a county jail, (4) a county courthouse, (5) the Commonwealth of Pennsylvania, and (6) two correctional officers at the county jail. He asserts official capacity claims against the defendant judges and one of the public defenders.

As with the original complaint, the court has had great difficulty with ascertaining the precise nature of the plaintiff's claims in this case. The plaintiff fails to include any factual allegation involving the judges, the public defenders, the county jail, the county courthouse, or the

assistant district attorney. He appears to allege an excessive force claim against an unidentified sergeant at the jail, and he asserts that a correctional officer interfered with his inmate mail.

The court will dismiss the amended complaint because (1) any individual capacity claims against the defendant judges are barred by absolute judicial immunity, (2) the Eleventh Amendment bars any claims for monetary relief against the defendant judges, who are state officials, and the Commonwealth of Pennsylvania, (3) the defendant public defenders are not state actors subject to liability under section 1983, (4) the county jail and county courthouse are not "persons" subject to liability under section 1983, (5) the plaintiff has failed to be sufficiently specific in pleading an excessive force claim insofar as it is unclear whether it is being asserted against one of the defendant correctional officers, (6) any claim against the assistant district attorney is barred by absolute prosecutorial immunity, and (7) the plaintiff has failed to plausibly allege a claim for interference with his inmate mail because he appears to identify a single incident and not a pattern or practice. The court will, however, provide the plaintiff with a final opportunity to file another amended complaint to the extent he can assert an excessive force claim against a specific defendant or a plausible claim of interference with his inmate mail.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

On October 13, 2021, the clerk of court docketed an application for leave to proceed *in forma pauperis* (the "IFP Application") and a complaint filed by the *pro se* plaintiff, Amer William-Whitfield ("William-Whitfield"), who is currently incarcerated at the Philadelphia Industrial Correctional Center awaiting trial on attempted murder and related charges.[1] *See* Doc.

---

[1] The publicly available docket entries show that William-Whitfield, also identified as Amer Williams, is facing charges of (1) aggravated assault, simple assault, and recklessly endangering another person at No. CP-51-CR-2141-2021, (2) attempted murder, aggravated assault, intimidation of a witness, possession of an instrument of crime, terroristic threats, simple assault, and recklessly endangering another person at No. CP-51-CR-637-2021, (3) attempted murder, aggravated assault, possession of instrument of crime, terroristic threats, simple assault, and recklessly endangering another person at No. CP-51-CR-636-2021, (4) aggravated assault and simple assault at No. CP-51-CR-134-2021, (5) aggravated assault and simple assault at No. CP-51-CR-133-2021, (6) aggravated assault

Nos. 1, 2. This court reviewed the IFP Application and screened the complaint pursuant to 28 U.S.C. § 1915(e)(2) and, on January 6, 2022, the court entered a memorandum opinion and order which granted the IFP Application and dismissed the complaint without prejudice for the failure to state a claim.[2] *See* Doc. Nos. 6, 7. The court also granted William-Whitfield leave to file an amended complaint within 30 days of the date of the order. *See* Jan. 6, 2022 Order at ¶ 9, Doc. No. 7.

---

and simple assault at No. CP-51-CR-132-2021, (7) aggravated assault and simple assault at No. CP-51-CR-131-2021, and (8) aggravated assault, simple assault, resisting arrest, and disorderly conduct at No. CP-51-CR-130-2021. It appears that William-Whitfield was being evaluated at Norristown State Hospital to determine whether he is competent to stand trial in these cases, and it appears that a doctor determined that he was not competent to proceed to trial as of December 8, 2021. *See* Doc. No. 9 at ECF p. 4 (December 8, 2021 letter from Julia Dekovich, Esquire, to William-Whitfield indicating that "[t]he doctor found at this time you are not competent to proceed to trial. You will receive the treatment that you need while in custody").

[2] In the complaint, William-Whitfield asserted claims against the Lehigh County Jail and the Lehigh County Courthouse. *See* Compl. at ECF pp. 1, 2, Doc. No. 2. As explained in the prior memorandum opinion,

> [u]nfortunately, the allegations in the complaint are very difficult to comprehend. William-Whitfield attempted to use the court's form complaint for actions under 42 U.S.C. § 1983, and it lists numerous constitutional amendments and mentions a marshal's sale, "modification or redaction of personal identifiers calendar control," "operating procedures," and "antitrust" among a list of random sentence fragments. *See* Compl. at ECF p. 4, Doc. No. 2. He also mentions events allegedly occurring in 2015-2016 involving the Delaware County Sheriff picking him up from Lehigh County Prison after a "72 hour [f]ugitive of justice s[e]arch which arose [sic] claim." *Id.* He describes being treated at St. Luke's University Hospital ("St. Luke's") in 2013 and then waking up in jail. *Id.* Attached to the form complaint are additional handwritten pages containing sentence fragments apparently about a restitution judgment, *see* Doc. No. 2-1 at ECF pp. 2–3, the text of constitutional amendments, *see id.* at ECF pp. 4–8, and citations to statutes and court rules, *see id.* at ECF p. 10. He appears to also make allegations about cyber-attacks, reports of UFOs, and that food is causing him to suffer from mental health issues. *See id.* at ECF p. 12.
>
> The handwritten pages also describe the 2013 events at St. Luke's in greater detail. William-Whitfield assert that in a 2013 criminal case, he was admitted to St. Luke's behavioral health unit because he began to hit a wall and door. *See id.* at ECF p. 14. He was surrounded by guards, who grabbed him to stop him from yelling curses and hitting the wall. *See id.* He was then sedated with an injection and later woke up in jail. *See id.* He alleges that the St. Luke's staff did not want him to get in trouble or be taken to jail, and the hospital was not supposed to release him to jail. *See id.*
>
> William-Whitfield goes on to state he "maxed out" his sentence in 2016 but, apparently, an additional detainer was illegally lodged against him in Delaware County. *See id.* at ECF p. 15. He claims that the Delaware County Sheriff violated his due process rights by picking him up from Lehigh County Prison in 2016. *See id.* Finally, on one handwritten page, William-Whitfield alleges that in September 2021 he was unlawfully restrained, and legal papers were put in a toilet because "the officers didn't want to give me any grievances." *Id.* at ECF p. 1. He claims that there is proof of this event on "camera view." *Id.*

Mem. Op. at 2–3, Doc. No. 6.

William-Whitfield filed an amended complaint and some additional documents (which the clerk of court docketed as an "Exhibit") on February 8, 2022.[3] *See* Doc. Nos. 9, 10. In the amended complaint, William-Whitfield again asserts civil rights claims under 42 U.S.C. § 1983, but he now asserts these claims against the Honorable Robert L. Steinberg of the Court of Common Pleas of Lehigh County, Lehigh County Jail ("LCJ"),[4] the Lehigh County Courthouse ("LCC"), Alexandra Kilvert French ("Attorney French") and Mark Adam Merdinger ("Attorney Merdinger") of the Lehigh County Public Defender's Office, Jeffrey Scott Dimmig[5] of the Lehigh County District Attorney's Office ("ADA Dimmig"), Patricia M. Engler, a Lehigh County Magisterial District Judge, and C/O Crawford and Sgt. Froster of the "jail."[6] *See* Am. Compl. at ECF pp. 1, 2, 3, 5. Although William-Whitfield names Judge Steinberg, Attorney French, Magisterial District Judge Engler, the LCJ, and the LCC, in their official capacities, he does not specify how he intends to sue the other named defendants. *See id.* at ECF pp. 2, 5.

---

[3] While technically not part of the amended complaint, the court has considered the additional documents the clerk of court has docketed as an "Exhibit" because of the liberal approach this court must take when evaluating *pro se* submissions where the *pro se* party is having difficulty articulating their claims. *See Edwards v. Rice*, 837 F. App'x 86, 88 (3d Cir. 2020) (per curiam) (finding Fourth Amendment claim based on review of "amended complaint, when read in conjunction with the original complaint and the attached exhibits" despite general rule that amended complaint supersedes original pleading).

[4] William-Whitfield identifies this defendant as the "Lehigh County Prison." *See* Am. Compl. at ECF pp. 1, 2, Doc. No. 10. He also refers to another defendant as "Lehigh County Prison/Courthouse Commonwealth Steinberg Robert L," which this court has interpreted to refer to Judge Steinberg, the Lehigh County Jail, and the Lehigh County Courthouse.

[5] William-Whitfield appears to have misspelled this defendant's first name as "Jeffery" and his last name as "Dimming." *See* Am. Compl. at ECF p. 3.

[6] In the list of defendants on the section 1983 complaint form, William-Whitfield lists Alexandra Kilvert French's job title as Lehigh County District Attorney, but he lists her address as that of the Lehigh County Public Defender. *See* Am. Compl. at ECF p. 5. Despite this confusion, William-Whitfield has attached copies of his docket sheets from his prior Lehigh County criminal cases to the amended complaint and Attorney French is listed as his criminal defense attorney in *Commonwealth v. Whitfield*, No. CP-39-CR-3930-2014. *See id.* at ECF p. 20. Accordingly, it appears that William-Whitfield names Attorney French as a defendant in her role as a Lehigh County Public Defender and as his prior defense counsel, and the court will treat his claim against her as such.

In addition, it appears that Magisterial District Judge Engler presided over William-Whitfield's bail hearing on September 3, 2014. *See id.* Judge Steinberg appears to have conducted a *Gagnon II* hearing in the case on April 4, 2016, which arose from a probation violation, and he sentenced William-Whitfield to one year of probation. *See id.* at ECF pp. 20, 22. As for Attorney Merdinger, one of William-Whitfield's criminal docket sheets shows him as William-Whitfield's criminal defense attorney in *Commonwealth v. Whitfield*, No. CP-39-CR-5351-2013. *See id.* at ECF p. 17. The last identified individual defendant, Assistant District Attorney Dimmig, is listed as the prosecuting attorney in this case. *See id.*

William-Whitfield's allegations in the amended complaint, like those in the original complaint, are difficult to comprehend. He again lists numerous constitutional amendments, *see id.* at ECF p. 5 (listing First, Fifth, Sixth, Seventh, Eighth, and Tenth Amendments), writes random sentence fragments, and lists purported definitions and statutory provisions, *see, e.g.*, *id.* at ECF pp. 4, 8, 18–19. He asserts his claim arose at St. Luke's Hospital and the Lehigh County Jail and/or Courthouse. *See id.* at ECF p. 6. He claims that a St. Luke's employee named Ms. Andrews did not want him to get into trouble or be taken to jail; instead, she wanted to get him help. *See id.* at ECF p. 7. He claims he was sedated after yelling and hitting a wall and woke up in jail. *See id.* He further asserts that the hospital was not supposed to release him to the jail. *See id.*

Among the documents attached to the amended complaint is a copy of a Philadelphia Department of Prisons inmate grievance form. *See id.* at ECF p. 9. William-Whitfield asserts on the form that

> an officer in the Prison system for unlawful restraint crue [sic] of sanitary products, as well on my court paperwork[. I]t was flushed in to [sic] the toilet on September 22, 2021 by a Sgt [who is unnamed but may be the defendant, Sergeant Froster]. The officers [a]lso put the mace in my face whon [sic] I was on the ground[.] Bottled prep[.] Also one of [t]he officer [sic] pound my [sic] on the ground with the hand cuff [sic] on after subdue the C/O name is Crawferd. [sic]"

*Id.* William-Whitfield also appears to assert that the defendant, C/O Crawford, put his legal mail in a toilet and got the paper wet. *See id.* at ECF p. 10. Finally, William-Whitfield alleges he was "discharged a fugitive of justice ellgal [sic] put in a life limb situation . . . . Delaware County was involved."[7] *Id.* He seems to seek monetary compensation.[8] *See id.*

---

[7] William-Whitfield also seemingly asserts in one of his separately submitted documents that a social worker at Norristown State Hospital did not give him due process for which he will file a "future petition and grievance." Doc. No. 9 at ECF p. 1.

[8] While unclear, William-Whitfield may also be seeking the dismissal of criminal charges as part of his requested relief in this case. *See* Am. Compl. at ECF p. 10 (stating that William-Whitfield seeks to "dispose of charges record est. . . . see attachment 2013 2014"). That form of relief is unavailable in a section 1983 claim. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical

## II.   DISCUSSION

### A.   **Standard of Review**

Because the court previously granted William-Whitfield leave to proceed *in forma pauperis*, the court must examine whether his amended complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard

---

imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

6

used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185

7

(quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### B.    Analysis

As with the original complaint, William-Whitfield seeks to bring claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. Section 1983 provides in pertinent part as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### 1.    Claims Against Judge Steinberg and Magisterial District Judge Engler

William-Whitfield has alleged civil rights claims against Judge Steinberg and Magisterial District Judge Engler in their individual and official capacities. Although William-Whitfield does not include any substantive allegations against either defendant, he has attached copies of his state court criminal docket sheets containing their names. It is apparent from those records that both defendants presided over portions of William-Whitfield's criminal cases in Lehigh County. To the extent that William-Whitfield is attempting to assert section 1983 claims against these defendants

based on their roles in presiding over aspects of his criminal prosecutions, he may not maintain such claims.

Judges are absolutely immune from liability in civil actions, including section 1983 actions, for their judicial acts. *Dennis v. Sparks,* 449 U.S. 24, 27 (1980). "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Both judges of general and limited jurisdiction, including magisterial district judges, are entitled to judicial immunity. *See Figueroa v. Blackburn*, 208 F.3d 435, 441 (3d Cir.2000) (concluding that magisterial district judges, even though they preside over courts of limited jurisdiction, are entitled to protections of judicial immunity). "Generally[,] . . . 'where a court has some subject matter jurisdiction, there is sufficient justification for immunity purposes.'" *Id.* at 443–44 (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

There are only two circumstances in which a plaintiff can overcome judicial immunity: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12 (citations omitted). With regard to the first exception, an act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). As for the second exception, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1112 (6th Cir. 1997)). In determining whether judicial immunity applies, the court "must decide whether the Complaint set forth allegations that, taken as true, establish that the application of an exception to the doctrine of

9

absolute judicial immunity is above the speculative level." *Kirkland v. DiLeo*, 581 F. App'x 111, 114–15 (3d Cir. 2014) (citing *Twombly*, 550 U.S. at 555).

Since the only information before the court is that the actions taken by Judges Steinberg and Engler were normal functions done in their judicial capacity in a case over which they properly exercised jurisdiction as a Judge of the Court of Common Pleas and a magisterial district judge, respectively, they are absolutely immune from suit. The court therefore dismisses the claims against Judges Steinberg and Engler in their individual capacities with prejudice.

William-Whitfield's official capacity claims against the judicial defendants are also properly dismissed. These official capacity claims are actually claims against the Commonwealth of Pennsylvania since the Lehigh County Court of Common Pleas Judges and magisterial district judges are parts of Pennsylvania's unified judicial system. *See Green v. Domestic Relations Section Ct. of Com. Pl. Compliance Unit Montgomery Cty.*, 649 F. App'x 178, 180 (3d Cir. 2016) ("All courts in the unified judicial system are part of the Commonwealth[.]" (citing *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008))); *Bern v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component. From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in Benn's suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed."); *Clark v. Kalteski*, No. 5:22-cv-81-JDW, 2022 WL 377402, at *3 (E.D. Pa. Feb. 8, 2022) (explaining that "the Lehigh County Court of Common Pleas . . . is part of Pennsylvania's Unified Judicial System"); *Youst v. Lancaster City Bureau Police Dep't*, No. 2:20-cv-3287, 2020 WL 6562073, at *4 n.9 (E.D. Pa. Nov. 9, 2020) (explaining that "claims brought against [magisterial district judge] in her official

10

capacity are really claims brought against the Commonwealth of Pennsylvania because, as a magisterial district judge within Pennsylvania's Unified Judicial System, [defendant magisterial district judge] is considered an official of the Commonwealth"); *see also* 42 Pa. C.S. § 301 ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the: . . . (4) Courts of common pleas [and] . . . (9) Magisterial district judges."). The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. C.S. §§ 8521–22; *see also Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity), it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Accordingly, the official capacity claims against Judges Steinberg and Engler are dismissed.[9]

### 2. Claims Against Defense Attorneys

William-Whitfield names as defendants Attorneys French and Merdinger of the Lehigh County Public Defender's Office. As with his "claims" against Judge Steinberg and Engler, William-Whitfield includes no substantive allegations against either Attorney French or Attorney Merdinger, other than to attach copies of his state court criminal docket sheets containing their

---

[9] The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). As this dismissal based on Eleventh Amendment immunity is for lack of subject-matter jurisdiction, the dismissal is without prejudice even though William-Whitfield cannot reassert another official capacity claim for monetary relief against these defendants in this court. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing that "a dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice' " (citations omitted)).

names. Therefore, it appears that William-Whitfield has named Attorneys French and Merdinger as defendants due to their involvement in those criminal cases.

Any section 1983 claims against Attorneys French and Merdinger are not plausible because "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted); *see Saunders v. BB&T Bank*, No. 20-3234, 2021 WL 1696937, at *4 (3d Cir. Apr. 29, 2021) (per curiam) ("Public defenders do not act under color of state law for purposes of § 1983 when they 'perform[ ] a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" (alteration in original)); *Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (per curiam) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the public defender's office because neither is a state actor for purposes of § 1983."); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *see also Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91, 95 (3d Cir. 2016) (per curiam) ("We also conclude that the District Court properly granted summary judgment to the defendants on Gannaway's claims against the Berks County Public Defender's Office and the appointed lawyers who represented him in criminal proceedings." (citing *Polk Cty.*, 454 U.S. at 325)). Since William-Whitfield appears to have named Attorneys French and Merdinger as defendants due to their involvement representing him in his prior criminal cases, and they are members of the Lehigh County Public Defender's Office, they are not state actors subject to liability under section 1983, and William-Whitfield has failed to state a plausible claim against them in the amended complaint.[10]

---

[10] In addition, the court dismisses any official capacity claim against Attorney French. *See Dorn*, 645 F. App'x at 115 (treating a public defender's employing entity, *i.e.* a public defender's office, similarly in this context).

### 3. Claims Against Assistant District Attorney Dimmig

William-Whitfield also names Lehigh County Assistant District Attorney Dimmig as a defendant. As with his claims against the other named defendants analyzed so far, William-Whitfield has included no substantive allegations against this defendant in the amended complaint other than to attach his docket sheets showing that Assistant District Attorney Dimmig represented the Commonwealth in his prior criminal proceeding in the Lehigh County Court of Common Pleas. William-Whitfield may not maintain a claim against Assistant District Attorney Dimmig.

Prosecutors, however, are entitled to absolute immunity from liability under section 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Moreover, district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348–49 (2009). Further, absolute immunity extends to instances of "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence, *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).

As William-Whitfield apparently named Assistant District Attorney Dimmig as a defendant due to his actions in the judicial phase of William-Whitfield's criminal case, he is absolutely immune from suit. Therefore, the court will dismiss with prejudice William-Whitfield's claims against Assistant District Attorney Dimmig.

4. **Claims Against "Lehigh County Prison/Courthouse Commonwealth Steinberg Robert L"**

William-Whitfield also names as a defendant, "Lehigh County Prison/Courthouse Commonwealth Steinberg Robert L." It is unclear whether this is a claim against the Lehigh County Courthouse, another reference to Judge Steinberg, a claim against the Commonwealth of Pennsylvania, or a claim against the Lehigh County Jail. Nonetheless, to the extent that William-Whitfield seeks to sue the Lehigh County Jail, the court dismisses this claim because section 1983 "applies only to persons." *Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A. 92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995). A county correctional facility, such as the Lehigh County Jail, is not a "person" under section 1983. *See Green v. Lehigh Cty. Prison*, Civ. A. No. 21-5138, 2022 WL 394747, at *2 (E.D. Pa. Feb. 9, 2022) ("The Complaint does not articulate a claim against the Lehigh County Jail under Section 1983 because "[i]n the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." (alteration in original) (quoting *Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009)); *Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, Civ. A. No. 20-4091, 2020 WL 7495665, at *3 (E.D. Pa. Dec. 21, 2020) ("[T]he Lehigh County Jail is not a 'person' subject to liability under § 1983."); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983). Therefore, the Lehigh County Jail is not a proper defendant in this section 1983 action.

To the extent that William-Whitfield is attempting to assert a claim against the Lehigh County Courthouse, the court must also dismiss this claim. Federal civil rights claims against a courthouse are not cognizable under section 1983. *See Elansari v. United States*, Civ. No. 3:15-CV-1461, 2016 WL 4415012, at *5 n.9 (M.D. Pa. July 11, 2016) ("Additionally, Elansari's claims against Moving defendants Centre County Court of Common Pleas, Columbia County Courthouse and Non-Moving defendant Centre County Correctional Facility fail because such entities are not considered 'persons' subject to suit under § 1983."); *Devenshire v. Kwidis*, Civ. A. No. 15-1026, 2016 WL 4032881, at *3 (W.D. Pa. June 28, 2016) ("Defendants are correct that [Beaver Courthouse], as a state entity, is not a 'person' under § 1983, and therefore may not be sued thereunder."); *Robinson v. Mercer Cty. Courthouse*, Civ. A. No. 12-4114, 2012 WL 4662967, at *3 (D.N.J. Oct. 1, 2012) ("Neither a courthouse, nor a county court, is a 'person' subject to liability under § 1983." (citations omitted)); *Bucano v. Sibum*, Civ. A. No. 3:CV-12-606, 2012 WL 2395553, at *11 (M.D. Pa. Apr. 23, 2012) ("As Defendants, Plaintiffs name, in part, [Montgomery County Correctional Facility] and Monroe County Courthouse. The law is well-settled that a prison and a courthouse are not "persons" that are subject to suit under § 1983." (citation omitted)).

Finally, to the extent that William-Whitfield is seeking to assert a claim against the Commonwealth of Pennsylvania, he may not do so because the Eleventh Amendment bars any suit against the Commonwealth for money damages in federal court. *See Pennhurst State Sch. and Hosp.*, 465 U.S. at 99–100. Accordingly, the court dismisses any claims against "Lehigh County Prison/Courthouse Commonwealth Steinberg Robert L."

### 5.     Claims Against Sgt. Froster and C/O Crawford

In the court's prior memorandum opinion screening the original complaint, the court dismissed without prejudice claims involving allegations that William-Whitfield was unlawfully

15

restrained, and that his legal papers were put in a toilet because neither of the defendants he named in the original complaint appeared to have any connection with the incident. *See* Mem. Op. at 11, Doc. No. 6. The court provided William-Whitfield with the opportunity to file an amended complaint to the extent he could name an appropriate individual defendant who was personally involved in a denial of his constitutional rights. *See id.*

In the amended complaint, William-Whitfield now asserts that an otherwise unspecified sergeant, who may be the defendant Sgt. Froster, "put the mail in [his] face when [he] was on the ground." Am. Compl. at ECF p. 10. William-Whitfield also alleges that an individual, who might also be Sgt. Foster, "pound [sic] [his] on the ground with the hand cuff [sic] on after subdue [sic]." *Id.* He also appears to aver that C/O Crawford put his legal mail in a toilet and got the paper wet. *See id.*

As currently pleaded, William-Whitfield's claim against Sgt. Froster is too vague to proceed. In this regard, it is unclear whether Sgt. Froster is the sergeant mentioned in the use of force incident since William-Whitfield does not use the sergeant's name. In addition, William-Whitfield does not specify whether the "mail" mentioned in the incident involving the unidentified sergeant is the same legal mail mentioned in his allegations involving C/O Crawford and how that part of the alleged incident violated William-Whitfield's constitutional rights. The court cannot, however, state that William-Whitfield can never successfully plead a plausible excessive force claim.[11] Accordingly, the court will dismiss the claim without prejudice and will provide William-

---

[11] Although William-Whitfield's publicly available criminal record shows he has been convicted of crimes in the past, he currently appears to be a pretrial detainee awaiting trial on numerous charges filed in the Court of Common Pleas of Philadelphia County. *See supra* n.1. Thus, the court would analyze any excessive force claim under the Due Process Clause of the Fourteenth Amendment, which protects pretrial detainees like William-Whitfield. *See Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193–94 (3d Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "[P]retrial detainees, who have not been convicted of any crimes, retain *at least* those constitutional rights that we have held are enjoyed by convicted prisoners." *Id.* at 194 (emphasis added) (citing *Bell*, 441 U.S. at 545); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (explaining that it was "clear" that Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment").

Whitfield a final opportunity to attempt to cure the defects with this claim identified by the court in this memorandum opinion.

Concerning C/O Crawford, William-Whitfield alleges that he damaged legal mail. [P]risoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails,'" *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996)), and prison officials can restrict a prisoner's right to send and receive mail only for legitimate penological reasons, *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (per curiam) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). However, allegations of a "single, isolated interference" with a prisoner's mail are insufficient to state a plausible claim for

---

To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment. *See Bell*, 441 U.S. at 538 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538–39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes). In addition, the court should consider the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment. *See Hubbard v. Taylor*, 538 F.3d 229, 236, 238 (3d Cir. 2008) (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (explaining that "to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution"); *Union Cty. Jail Inmates v. DiBuono*, 713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length of confinement is only one factor among several that must be considered by a district court in evaluating the totality of circumstances relevant to any alleged constitutional deficiency in shelter").

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotation marks and alterations omitted). In general, when alleging a sufficiently culpable state of mind, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners, and pretrial detainees[.]" (internal citations omitted)).

17

relief based on a First Amendment violation. *Id.* (citing *Bieregu*, 59 F.3d at 1452); *see, e.g.*, *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation."). Thus, a plaintiff must allege that the interference was done pursuant to a "pattern and practice." *Jones*, 461 F.3d at 359 ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").

While prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails, *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006), courts have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation, *see, e.g.*, *Nixon*, 501 F. App'x at 178 ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation." (footnote and citations omitted)); *Beese v. Liebe*, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997) ("We agree with other circuits that an isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." (alteration in original) (citations and internal quotation marks omitted)). Although William-Whitfield vaguely alleges interference with his legal mail, he includes no allegations that the interference was part of a pattern and practice. Without at least a modicum of factual specificity on this point, the court must conclude that William-Whitfield has failed to state a plausible claim

of interference with legal mail under the First Amendment arising from the isolated incident described in the amended complaint.

### III.    CONCLUSION

For the foregoing reasons, the court will dismiss with prejudice William-Whitfield's (1) individual capacity claims against Judge Steinberg, Magisterial District Judge Engler, Attorney French, Attorney Merdinger, and Assistant District Attorney Dimmig, (2) claims against the Lehigh County Jail and the Lehigh County Courthouse, and (3) official capacity claim against Attorney French. The court will also dismiss without prejudice William-Whitfield's (1) official capacity claims against Judge Steinberg and Magisterial District Judge Engler, (2) claims for monetary damages against the Commonwealth of Pennsylvania, (3) claim for excessive force against Sgt. Froster, and (4) claims for interference with his inmate mail against C/O Crawford. The court will grant William-Whitfield leave to file an amended complaint to the extent he can assert a plausible claim for excessive force or interference with his inmate mail.[12]

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[12] Generally, the court should provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).