IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMER WILLIAM-WHITFIELD, : 
 : 
Plaintiff, : CIVIL ACTION NO. 21-4544
 : 
v. : 
 : 
COMMONWEALTH LEHIGH COUNTY : 
PRISON, JUDGE ROBERT L. : 
STEINBERG, and LEHIGH COUNTY : 
P.D., DA OFFICE JAMES B. MARTIN, : 
MAGISTERIAL DISTRICT JUDGE : 
PATRICIA M. ENGLER, ALEXANDRA : 
KILVERT FRENCH, C/O CRAWFORD, : 
SGT. DAWSON, and JOHN DOES 1, 2, : 
 : 
Defendants.[1] : 

## MEMORANDUM OPINION

Smith, J.                                                                                            April 29, 2022

The *pro se* plaintiff, who is proceeding *in forma pauperis* and is currently defending against

numerous criminal charges, including attempted murder, in Philadelphia, is currently before the

court on his third attempt to state plausible claims for constitutional violations under 42 U.S.C. §

1983. In his newest amended complaint, he again attempts to assert claims against (1) a Court of

Common Pleas Judge and a magisterial district judge who presided over portions of prior state

court criminal cases in another county, (2) a public defender who appears to have represented him

in these criminal cases, and (3) a county correctional officer. He also has identified some new

defendants, such as the Commonwealth of Pennsylvania, a county's district attorney, another

county correctional officer, and two John Doe defendants.

---

[1] As explained *infra*, the plaintiff has failed to name all defendants against whom he is asserting claims in the caption. Since the court is nonetheless addressing any possible claims against these defendants not named in the caption, the court has modified the caption to include these defendants.

As with the two prior versions of the operative complaint, the court has had great difficulty with ascertaining the precise nature of the plaintiff's claims in this case. Nonetheless, after reviewing the current amended complaint and construing the allegations in the light most favorable to the plaintiff, the court must again conclude that the plaintiff has failed to state a plausible claim against any defendant. Moreover, he has attempted to reassert claims against defendants that this court previously dismissed with prejudice. The court will therefore once again dismiss the plaintiff's operative complaint, but this time will dismiss it with prejudice because the court finds that providing him with leave to file yet another amended complaint would be futile.

## I.     ALLEGATIONS AND PROCEDURAL HISTORY

On October 13, 2021, the clerk of court docketed an application for leave to proceed *in forma pauperis* (the "IFP Application") and a complaint filed by the *pro se* plaintiff, Amer William-Whitfield ("William-Whitfield"), who is currently incarcerated at the Philadelphia Industrial Correctional Center awaiting trial on attempted murder and related charges.[2] *See* Doc. Nos. 1, 2. This court reviewed the IFP Application and screened the complaint pursuant to 28 U.S.C. § 1915(e)(2) and, on January 6, 2022, the court entered a memorandum opinion and order which granted the IFP Application and dismissed the complaint without prejudice for the failure

---

[2] The publicly available docket entries show that William-Whitfield, also identified as Amer Williams, is facing charges of (1) aggravated assault, simple assault, and recklessly endangering another person at No. CP-51-CR-2141-2021, (2) attempted murder, aggravated assault, intimidation of a witness, possession of an instrument of crime, terroristic threats, simple assault, and recklessly endangering another person at No. CP-51-CR-637-2021, (3) attempted murder, aggravated assault, possession of instrument of crime, terroristic threats, simple assault, and recklessly endangering another person at No. CP-51-CR-636-2021, (4) aggravated assault and simple assault at No. CP-51-CR-134-2021, (5) aggravated assault and simple assault at No. CP-51-CR-133-2021, (6) aggravated assault and simple assault at No. CP-51-CR-132-2021, (7) aggravated assault and simple assault at No. CP-51-CR-131-2021, and (8) aggravated assault, simple assault, resisting arrest, and disorderly conduct at No. CP-51-CR-130-2021. It appears that William-Whitfield was being evaluated at Norristown State Hospital to determine whether he is competent to stand trial in these cases, and it appears that a doctor determined that he was not competent to proceed to trial as of December 8, 2021. *See* Doc. No. 9 at ECF p. 4 (December 8, 2021 letter from Julia Dekovich, Esquire, to William-Whitfield indicating that "[t]he doctor found at this time you are not competent to proceed to trial. You will receive the treatment that you need while in custody").

to state a claim.[3] *See* Doc. Nos. 6, 7. The court also granted William-Whitfield leave to file an amended complaint within 30 days of the date of the order. *See* Jan. 6, 2022 Order at ¶ 9, Doc. No. 7.

William-Whitfield filed an amended complaint and some additional documents (which the clerk of court docketed as an "Exhibit") on February 8, 2022.[4] *See* Doc. Nos. 9, 10. In the amended complaint, William-Whitfield again asserted civil rights claims under 42 U.S.C. § 1983, but

---

[3] In the complaint, William-Whitfield asserted claims under 42 U.S.C. § 1983 against the Lehigh County Jail and the Lehigh County Courthouse. *See* Compl. at ECF pp. 1, 2, Doc. No. 2. As explained in a prior memorandum opinion,

> [u]nfortunately, the allegations in the complaint are very difficult to comprehend. William-Whitfield attempted to use the court's form complaint for actions under 42 U.S.C. § 1983, and it lists numerous constitutional amendments and mentions a marshal's sale, "modification or redaction of personal identifiers calendar control," "operating procedures," and "antitrust" among a list of random sentence fragments. *See* Compl. at ECF p. 4, Doc. No. 2. He also mentions events allegedly occurring in 2015-2016 involving the Delaware County Sheriff picking him up from Lehigh County Prison after a "72 hour [f]ugitive of justice s[e]arch which arose [sic] claim." *Id.* He describes being treated at St. Luke's University Hospital ("St. Luke's") in 2013 and then waking up in jail. *Id.* Attached to the form complaint are additional handwritten pages containing sentence fragments apparently about a restitution judgment, *see* Doc. No. 2-1 at ECF pp. 2–3, the text of constitutional amendments, *see id.* at ECF pp. 4–8, and citations to statutes and court rules, *see id.* at ECF p. 10. He appears to also make allegations about cyber-attacks, reports of UFOs, and that food is causing him to suffer from mental health issues. *See id.* at ECF p. 12.
>
> The handwritten pages also describe the 2013 events at St. Luke's in greater detail. William-Whitfield assert that in a 2013 criminal case, he was admitted to St. Luke's behavioral health unit because he began to hit a wall and door. *See id.* at ECF p. 14. He was surrounded by guards, who grabbed him to stop him from yelling curses and hitting the wall. *See id.* He was then sedated with an injection and later woke up in jail. *See id.* He alleges that the St. Luke's staff did not want him to get in trouble or be taken to jail, and the hospital was not supposed to release him to jail. *See id.*
>
> William-Whitfield goes on to state he "maxed out" his sentence in 2016 but, apparently, an additional detainer was illegally lodged against him in Delaware County. *See id.* at ECF p. 15. He claims that the Delaware County Sheriff violated his due process rights by picking him up from Lehigh County Prison in 2016. *See id.* Finally, on one handwritten page, William-Whitfield alleges that in September 2021 he was unlawfully restrained, and legal papers were put in a toilet because "the officers didn't want to give me any grievances." *Id.* at ECF p. 1. He claims that there is proof of this event on "camera view." *Id.*

Jan. 6, 2022 Mem. Op. at 2–3, Doc. No. 6.

[4] While technically not part of the amended complaint, the court considered the additional documents the clerk of court has docketed as an "Exhibit" because of the liberal approach this court must take when evaluating *pro se* submissions where the *pro se* party is having difficulty articulating their claims. *See Edwards v. Rice*, 837 F. App'x 86, 88 (3d Cir. 2020) (per curiam) (finding Fourth Amendment claim based on review of "amended complaint, when read in conjunction with the original complaint and the attached exhibits" despite general rule that amended complaint supersedes original pleading).

asserted these claims against the Honorable Robert L. Steinberg of the Court of Common Pleas of Lehigh County, Lehigh County Jail ("LCJ"),[5] the Lehigh County Courthouse ("LCC"), Alexandra Kilvert French ("Attorney French") and Mark Adam Merdinger ("Attorney Merdinger") of the Lehigh County Public Defender's Office, Jeffrey Scott Dimmig[6] of the Lehigh County District Attorney's Office ("ADA Dimmig"), Patricia M. Engler, a Lehigh County Magisterial District Judge, and C/O Crawford and Sgt. Froster of the "jail."[7] *See* Am. Compl. at ECF pp. 1, 2, 3, 5. Although William-Whitfield named Judge Steinberg, Attorney French, Magisterial District Judge Engler, the LCJ, and the LCC, in their official capacities, he did not specify how he intended to sue the other named defendants. *See id.* at ECF pp. 2, 5.

This court screened the amended complaint pursuant to section 1915(e)(2) and entered a memorandum opinion and order on March 4, 2022. *See* Doc. Nos. 12, 13. In these documents, the court, *inter alia* (1) dismissed with prejudice any individual capacity claims against Judge Steinberg and Judge Engler, (2) dismissed without prejudice any official capacity claims against Judge Steinberg and Judge Engler, (3) dismissed with prejudice any individual and official capacity claims against Attorney French, (4) dismissed with prejudice any claims against Attorney

---

[5] William-Whitfield identified this defendant as the "Lehigh County Prison." *See* Am. Compl. at ECF pp. 1, 2, Doc. No. 10. He also refers to another defendant as "Lehigh County Prison/Courthouse Commonwealth Steinberg Robert L," which this court interpreted to refer to Judge Steinberg, the Lehigh County Jail, and the Lehigh County Courthouse.
[6] William-Whitfield appears to have misspelled this defendant's first name as "Jeffery" and his last name as "Dimming." *See* Am. Compl. at ECF p. 3.
[7] In the list of defendants on the section 1983 complaint form, William-Whitfield listed Alexandra Kilvert French's job title as Lehigh County District Attorney, but he listed her address as that of the Lehigh County Public Defender. *See* Am. Compl. at ECF p. 5. Despite this confusion, William-Whitfield attached copies of his docket sheets from his prior Lehigh County criminal cases to the amended complaint and Attorney French is listed as his criminal defense attorney in *Commonwealth v. Whitfield*, No. CP-39-CR-3930-2014 (Lehigh Cnty. Ct. Com. Pl.). *See id.* at ECF p. 20. Accordingly, it appeared that William-Whitfield named Attorney French as a defendant in her role as a Lehigh County Public Defender and as his prior defense counsel, and the court treated his claim against her as such.
  In addition, it appeared that Magisterial District Judge Engler presided over William-Whitfield's bail hearing on September 3, 2014. *See id.* Judge Steinberg appears to have conducted a *Gagnon II* hearing in the case on April 4, 2016, which arose from a probation violation, and he sentenced William-Whitfield to one year of probation. *See id.* at ECF pp. 20, 22. As for Attorney Merdinger, one of William-Whitfield's criminal docket sheets shows him as William-Whitfield's criminal defense attorney in *Commonwealth v. Whitfield*, No. CP-39-CR-5351-2013. *See id.* at ECF p. 17. The last identified individual defendant in the amended complaint, Assistant District Attorney Dimmig, is listed as the prosecuting attorney in this case. *See id.*

Merdinger, (5) dismissed with prejudice any claims against ADA Dimmig, (6) dismissed with prejudice any claims against "Lehigh County Prison/Courthouse Commonwealth Steinberg Robert L," to the extent they are claims against the Lehigh County Jail or Lehigh County Courthouse, (7) dismissed without prejudice any claims against "Lehigh County Prison/Courthouse Commonwealth Steinberg Robert L," to the extent they are claims against the Commonwealth of Pennsylvania, and (8) dismissed without prejudice any claims against Sgt. Froster and C/O Crawford.[8] *See* Mar. 4, 2022 Order at 1–2, Doc. No. 13. The court again provided William-Whitfield with leave to file a second amended complaint if he could cure the defects in those claims that the court dismissed without prejudice. *See* Mar. 4, 2022 Mem. Op. at 19, Doc. No. 12; Mar. 4, 2022 Order at 3.

William-Whitfield has now returned with a second amended complaint and a separately filed exhibit. *See* Doc. Nos. 14, 15. In these documents, William-Whitfield again asserts civil rights claims pursuant to 42 U.S.C. § 1983. Named as defendants in the caption and body of the second amended complaint are: (1) "Commonwealth," presumably the Commonwealth of Pennsylvania,

---

[8] In the confusing amended complaint, William-Whitfield listed numerous constitutional amendments, *see* Am. Compl. at ECF p. 5, Doc. No. 10 (listing First, Fifth, Sixth, Seventh, Eighth, and Tenth Amendments), wrote random sentence fragments, and listed purported definitions and statutory provisions, *see, e.g., id.* at ECF pp. 4, 8, 18–19. He asserted his claims arose at St. Luke's Hospital and the Lehigh County Jail and/or Courthouse. *See id.* at ECF p. 6. He claimed that a St. Luke's employee named Ms. Andrews did not want him to get into trouble or be taken to jail; instead, she wanted to get him help. *See id.* at ECF p. 7. He claimed he was sedated after yelling and hitting a wall and woke up in jail. *See id.* He further asserted that the hospital was not supposed to release him to the jail. *See id.*

    Among the documents William-Whitfield attached to the amended complaint is a copy of a Philadelphia Department of Prisons inmate grievance form. *See id.* at ECF p. 9. William-Whitfield asserted on the form that

> an officer in the Prison system for unlawful restraint crue [sic] of sanitary products, as well on my court paperwork[. I]t was flushed in to [sic] the toilet on September 22, 2021 by a Sgt [who is unnamed but may be the defendant, Sergeant Froster]. The officers [a]lso put the mace in my face whon [sic] I was on the ground[.] Bottled prep[.] Also one of [t]he officer [sic] pound my [sic] on the ground with the hand cuff [sic] on after subdue the C/O name is Crawferd. [sic]"

*Id.* William-Whitfield also appeared to assert that the defendant, C/O Crawford, put his legal mail in a toilet and got the paper wet. *See id.* at ECF p. 10. Finally, William-Whitfield alleged he was "discharged a fugitive of justice ellgal [sic] put in a life limb situation . . . . Delaware County was involved." *Id.* He seems to seek monetary compensation. *See id.*

(2) LCJ (which is identified as "Lehigh County Prison"), (3) Lehigh County District Attorney James B. Martin, (4) Judge Steinberg, (5) Judge Engler, (6) Attorney French, (7) Sgt. Dawson and C/O Crawford, both employed at the LCJ, and (8) two John Does. *See* 2d Am. Compl. at ECF pp. 1–2, 5; Doc. No. 14 at ECF pp. 1–2. As indicated above, William-Whitfield had named Judge Steinberg, Judge Engler, Attorney French, and C/O Crawford as defendants in his amended complaint, but the Commonwealth of Pennsylvania, the LCJ, District Attorney Martin, Sgt. Dawson, and the two John Does were not.

As for the allegations in the second amended complaint, William-Whitfield has once again presented a pleading which is difficult to comprehend. For example, he recites the text of the Fifth Amendment, mentions "penal offence [sic] according to law," and includes a list of non-defendant individuals without explanation. *See* 2d Am. Compl. at ECF pp. 3, 4, 18. He also alleges that the named defendants are liable for "discharge oversighting" because he purportedly completed his maximum sentence in April 2016. *See id.* at ECF p. 7.

William-Whitfield appears to assert that District Attorney Martin violated his rights in connection with a case heard before Judge Steinberg because Judge Steinberg imposed consecutive terms of imprisonment, when Judge Steinberg and District Attorney Martin had "just spoke about probation violation explain program not after's [sic]." *Id.* He goes on to assert that District Attorney Martin "failed to statement of [sic] Delaware County expedition service of process in between the violation of all party time of motion once time has been served locations to attend which was relevant events[.] Judge Robert L. Steinberg involved with unsuccessfully [sic] consecutive term." *Id.* at ECF p. 8.

Regarding his apparent claims against other named defendants, Judge Engler is alleged to be "involved in relevant disposition sentencing penalties." *Id.* at ECF p. 9. William-Whitfield

alleges that Sgt. Dawson was "involved with unit discharge" and "72 hour warrant re-view" in April 2016. *See id.* at ECF pp. 7, 9. Sgt. Dawson also "failed to varified [sic] events giving rise. After 48 hours there was the warrant for I William-Whitfield inside Lehigh County Courthouse restitution." *See id.* at ECF p. 9. C/O Crawford allegedly "respond[ed] about misconduct of cleaning supplies," which appears to have caused "unlawful restraint top [l]evel Sgt [otherwise unidentified] by the [n]amed [d]efendants unknown John Doe #1, C/O Crawford[,] an[d] others by the John Doe #2." Doc. No. 14 at ECF p. 2. William-Whitfield also states that someone, possibly these same actors, "added to cuff pull push William-Whitfield only could sit down inside room cell." *Id.* John Doe #1 allegedly put mail in a toilet and began to flush wile C/O Crawford watched. *See id.* William-Whitfield also alleges he was "face on the ground as part of progress of unlawful restraint" and that emergency medical assistance was called, but again fails to identify any specific named defendant involved with this allegation. *See id.*

Based on these allegations, William-Whitfield seeks money damages and "record of charges simple relief disposition sentencing penalties."[9] 2d Am. Compl. at ECF p. 11.

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

Because the court previously granted William-Whitfield leave to proceed *in forma pauperis*, the court must examine whether his second amended complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant

---

[9] While (unsurprisingly) not entirely clear, William-Whitfield may also be seeking as relief in this case the dismissal of criminal charges. *See* 2d Am. Compl. at ECF p. 11. As the court previously informed William-Whitfield, *see* Mar. 4, 2022 Mem. Op. at 5 n.8, that form of relief is unavailable in a section 1983 claim. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

immune from monetary relief.[10] *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). An operative complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

---

[10] This court recognizes its obligation under Rule 17(c)(2) of the Federal Rules of Civil Procedure to protect an "incompetent person who is unrepresented in an action." As William-Whitfield's state court records indicate he was committed to Norristown State Hospital under the Mental Health Act, *see supra* n.1 (referencing William-Whitfield's commitment to Norristown State Hospital in *Commonwealth v. William-Whitfield*, No. CP-51-CR-2141-2021 (Philadelphia Cnty. Ct. Com. Pl.)), appointment of a guardian *ad litem*, attorney, or other representative would appear to be required in this case if it proceeded past screening under section 1915. *See Powell v. Symons*, 680 F.3d 301 (3d Cir. 2012). However, the court may still conduct a screening under section 1915(e) consistent with Rule 17. *See id.* at 307 ("The federal courts are flooded with pro se litigants with fanciful notions of their rights and deprivations. We cannot expect district judges to do any more than undertake a duty of inquiry as to whether there may be a viable basis to invoke Rule 17. That duty of inquiry involves a determination of whether there is verifiable evidence of incompetence. In the context of unrepresented litigants proceeding in forma pauperis, this inquiry would usually occur after the preliminary merits screening under 28 U.S.C. § 1915A or 28 U.S.C. § 1915(e)(2)."); *see also Himchak v. Dye*, 684 F. App'x 249, 252 (3d Cir. 2017) (per curiam) ("Because, as discussed below, we agree that the District Court properly dismissed the complaint under the screening provisions, it did not abuse its discretion by not appointing a guardian to protect Himchak's interests pursuant to Fed. R. Civ. P. 17(c)."); *Dangim v. FNU LNU, USA Law Enf't*, No. 16-812, 2017 WL 3149359, at *3 (D.N.M. June 2, 2017) (understanding *Powell* to convey that "a district court may sue sponte dismiss a complaint under § 1915A or § 1915(e)(2) as frivolous, malicious, or for failure to state a claim on which relief may be granted without first inquiring into a pro se litigant's mental competency to represent himself or herself under [R]ule 17(c)(2)").

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## B.   Analysis

As with the original complaint and amended complaint, William-Whitfield seeks to bring claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. *See* 2d Am. Compl. at ECF p. 5. Section 1983 provides in pertinent part as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### 1.   Claims Against the Commonwealth of Pennsylvania

William-Whitfield has asserted claims against the Commonwealth of Pennsylvania despite this court previously holding that such claims could not proceed because of the jurisdictional bar of the Eleventh Amendment. *See* Mar. 4, 2022 Mem. Op. at 11 (citations omitted). The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court that seek

monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). The Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. C.S. §§ 8521–22; *see also Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity). Thus, it is immune from suits for damages filed in federal court. Accordingly, the court will dismiss without prejudice any claims against the Commonwealth of Pennsylvania.[11]

### 2.    Claims Against the LCJ

William-Whitfield has named the LCJ as a defendant in the second amended complaint despite this court having dismissed any claim against this defendant in the amended complaint. *See* Mar. 4, 2022 Mem. Op. at 14. The court again dismisses this claim for the failure to state a claim because section 1983 "applies only to persons." *Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A. 92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995). A county correctional facility, such as the LCJ, is not a "person" under section 1983. *See Green v. Lehigh Cnty. Prison*, Civ. A. No. 21-5138, 2022 WL 394747, at *2 (E.D. Pa. Feb. 9, 2022) ("The Complaint does not articulate a claim against the Lehigh County Jail under Section 1983 because "[i]n the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." (alteration in original) (quoting *Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11,

---

[11] The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). As this dismissal based on Eleventh Amendment immunity is for lack of subject-matter jurisdiction, the dismissal is without prejudice even though William-Whitfield cannot reassert another official capacity claim for monetary relief against these defendants in this court. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing that "a dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice'" (citations omitted)).

2009))); *Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, Civ. A. No. 20-4091, 2020 WL 7495665, at *3 (E.D. Pa. Dec. 21, 2020) ("[T]he Lehigh County Jail is not a 'person' subject to liability under § 1983."); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983). Therefore, the LCJ is not a proper defendant in this section 1983 action, and the court will dismiss any claims William-Whitfield has asserted against it.

### 3.    Claims Against Judge Steinberg and Magisterial District Judge Engler

William-Whitfield has named Judge Steinberg and Judge Engler as defendants despite this court having dismissed any official capacity or individual capacity section 1983 claims against them in the amended complaint. *See* Mar. 4, 2022 Mem. Op. at 8–11. As the court explained:

> Although William-Whitfield does not include any substantive allegations against either defendant, he has attached copies of his state court criminal docket sheets containing their names. It is apparent from those records that both defendants presided over portions of William-Whitfield's criminal cases in Lehigh County. To the extent that William-Whitfield is attempting to assert section 1983 claims against these defendants based on their roles in presiding over aspects of his criminal prosecutions, he may not maintain such claims.
>
> Judges are absolutely immune from liability in civil actions, including section 1983 actions, for their judicial acts. *Dennis v. Sparks,* 449 U.S. 24, 27 (1980). "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Both judges of general and limited jurisdiction, including magisterial district judges, are entitled to judicial immunity. *See Figueroa v. Blackburn*, 208 F.3d 435, 441 (3d Cir.2000) (concluding that magisterial district judges, even though they preside over courts of limited jurisdiction, are entitled to protections of judicial immunity). "Generally[,] . . . 'where a court has some subject matter jurisdiction, there is

sufficient justification for immunity purposes.'" *Id.* at 443–44 (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

There are only two circumstances in which a plaintiff can overcome judicial immunity: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12 (citations omitted). With regard to the first exception, an act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). As for the second exception, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1112 (6th Cir. 1997)). In determining whether judicial immunity applies, the court "must decide whether the Complaint set forth allegations that, taken as true, establish that the application of an exception to the doctrine of absolute judicial immunity is above the speculative level." *Kirkland v. DiLeo*, 581 F. App'x 111, 114–15 (3d Cir. 2014) (citing *Twombly*, 550 U.S. at 555).

Since the only information before the court is that the actions taken by Judges Steinberg and Engler were normal functions done in their judicial capacity in a case over which they properly exercised jurisdiction as a Judge of the Court of Common Pleas and a magisterial district judge, respectively, they are absolutely immune from suit. The court therefore dismisses the claims against Judges Steinberg and Engler in their individual capacities with prejudice.

William-Whitfield's official capacity claims against the judicial defendants are also properly dismissed. These official capacity claims are actually claims against the Commonwealth of Pennsylvania since the Lehigh County Court of Common Pleas Judges and magisterial district judges are parts of Pennsylvania's unified judicial system. *See Green v. Domestic Relations Section Ct. of Com. Pl. Compliance Unit Montgomery Cty.*, 649 F. App'x 178, 180 (3d Cir. 2016) ("All courts in the unified judicial system are part of the Commonwealth[.]" (citing *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008))); *Bern v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component. From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in Benn's suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed."); *Clark v. Kalteski*, No. 5:22-cv-81-JDW, 2022 WL 377402, at *3 (E.D. Pa. Feb. 8, 2022) (explaining that "the Lehigh County Court of Common Pleas . . . is part of Pennsylvania's Unified Judicial System"); *Youst v. Lancaster City Bureau Police Dep't*, No. 2:20-cv-3287, 2020 WL 6562073, at *4 n.9 (E.D. Pa. Nov. 9, 2020) (explaining that "claims brought against [magisterial district judge] in her official capacity are really claims brought against the Commonwealth of Pennsylvania

because, as a magisterial district judge within Pennsylvania's Unified Judicial System, [defendant magisterial district judge] is considered an official of the Commonwealth"); *see also* 42 Pa. C.S. § 301 ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the: . . . (4) Courts of common pleas [and] . . . (9) Magisterial district judges."). The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. C.S. §§ 8521–22; *see also Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity), it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Accordingly, the official capacity claims against Judges Steinberg and Engler are dismissed.[12]

*Id.*

The order accompanying the memorandum opinion dismissed the claims against Judge Steinberg and Judge Engler with prejudice, terminated them as defendants, and provided that, should William-Whitfield decide to file a second amended complaint, he "may **not** reassert a claim against a defendant that has already been dismissed with prejudice." Mar. 4, 2022 Order at 3. Because the court previously dismissed with prejudice the claims against Judge Steinberg and Judge Engler, and because William-Whitfield again appears to name them as defendants based on their normal judicial functions in a case over which they properly exercised jurisdiction, the court again dismisses them from this action with prejudice.

---

[12] The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). As this dismissal based on Eleventh Amendment immunity is for lack of subject-matter jurisdiction, the dismissal is without prejudice even though William-Whitfield cannot reassert another official capacity claim for monetary relief against these defendants in this court. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing that "a dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice' " (citations omitted)).

4.    **Claims Against Attorney French**

William-Whitfield has again named his former public defender, Attorney French, as a defendant and, again, he makes no substantive allegations against her. Therefore, it appears that William-Whitfield has again named Attorney French as a defendant due to her involvement in his criminal cases.

As the court previously explained, any section 1983 claims against Attorney French are implausible because "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted); *see Saunders v. BB&T Bank*, 852 F. App'x 651, 655 (3d Cir. 2021) (per curiam) ("Public defenders do not act under color of state law for purposes of § 1983 when they 'perform[ ] a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" (alteration in original)); *Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (per curiam) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the public defender's office because neither is a state actor for purposes of § 1983."); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *see also Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91, 95 (3d Cir. 2016) (per curiam) ("We also conclude that the District Court properly granted summary judgment to the defendants on Gannaway's claims against the Berks County Public Defender's Office and the appointed lawyers who represented him in criminal proceedings." (citing *Polk Cnty.*, 454 U.S. at 325)). With this explanation, the court dismissed with prejudice any section 1983 claims against Attorney French and terminated her as a defendant. *See* Mar. 4, 2022 Order at 2. Because the court previously dismissed the claims against Attorney

15

French with prejudice, and because William-Whitfield appears to have named Attorney French as a defendant solely due to her involvement representing him as a public defender in his prior criminal cases, she is not a state actor subject to liability under section 1983, and William-Whitfield has failed to state a plausible claim against her in the second amended complaint. Therefore, the court will dismiss with prejudice any claims against her in this case.

### 5. Claims Against District Attorney Martin

William-Whitfield appears to assert that District Attorney Martin violated his constitutional rights in connection with a case heard before Judge Steinberg. *See* 2d Am. Compl. at ECF p. 7. William-Whitfield alleges that District Attorney Martin violated his rights because Judge Steinberg imposed consecutive terms of imprisonment, when Judge Steinberg and District Attorney Martin "just spoke about probation violation explain program not after's [sic]." *Id.* He then asserts that District Attorney Martin "failed to statement of [sic] Delaware County expedition service of process in between the violation of all party time of motion once time has been served locations to attend which was relevant events[.] Judge Robert L. Steinberg involved with unsuccessfully [sic] consecutive term." *Id.* at ECF p. 8.

The court has interpreted these allegations as referring to District Attorney Martin's actions in representing the Commonwealth of Pennsylvania in William-Whitfield's prior criminal proceedings. Prosecutors, however, are entitled to absolute immunity from liability under section 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Moreover, district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348–49 (2009). Further, absolute

immunity extends to instances of "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence, *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).

As William-Whitfield apparently named District Attorney Martin as a defendant due to his actions in the judicial phase of William-Whitfield's prior criminal case, he is absolutely immune from suit. Therefore, the court will dismiss with prejudice William-Whitfield's claims against District Attorney Martin.

### 6.        Claims Against Sgt. Dawson

The allegation against Sgt. Dawson, while unclear, appears to relate to his purported failure to verify events involving a warrant in Lehigh County in April 2016. *See* 2d Am. Compl. at ECF pp. 7, 9. Because William-Whitfield did not file this case until October 13, 2021, any civil rights claim regarding Sgt. Dawson's actions in 2016 is time-barred and will be dismissed.

All section 1983 claims are subject to the applicable state's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (concluding that statute of limitations for section 1983 actions "is governed by the personal injury tort law of the state where the cause of action arose"). Since William-Whitfield's claims arose in Pennsylvania, the court applies Pennsylvania's relevant limitations period, which in this case is two years. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (stating that "[t]he statute of limitations applicable to § 1983 claims in Pennsylvania is two years" (citation omitted)). This two-year limitations period accrues "when a plaintiff has a complete and present cause of action, that is, when [the plaintiff] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotation marks and citation omitted). In general, this means that the statute of limitations

17

"accrues when the plaintiff knew or should have known of the injury upon which [the plaintiff's] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

As the limitations period applicable to William-Whitfield's section 1983 claim against Sgt. Dawson is two years, the claim is untimely by more than two years. Accordingly, the court will dismiss with prejudice William-Whitfield's section 1983 claim against Sgt. Dawson based on actions that occurred in April 2016.[13] *See Wisniewski*, 857 F.3d at 157 ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the fact of the complaint.").

### 7.    Claims Against C/O Crawford and John Doe Defendants

In his amended complaint, William-Whitfield had alleged that C/O Crawford put his legal mail in a toilet and got the paper wet. *See* Am. Compl. at ECF p. 10, Doc. No. 10. The court dismissed this claim as implausible because it was apparently an isolated incident and William-Whitfield included no allegations that the interference was part of a pattern and practice.[14] *See*

---

[13] Even if the action was timely, William-Whitfield's allegations against Sgt. Dawson are too unclear and conclusory to state a plausible claim for relief.

[14] As the court explained:

[P]risoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails,'" *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996)), and prison officials can restrict a prisoner's right to send and receive mail only for legitimate penological reasons, *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (per curiam) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). However, allegations of a "single, isolated interference" with a prisoner's mail are insufficient to state a plausible claim for relief based on a First Amendment violation. *Id.* (citing *Bieregu*, 59 F.3d at 1452); *see, e.g., Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation."). Thus, a plaintiff must allege that the interference was done pursuant to a "pattern and practice." *Jones*, 461 F.3d at 359 ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").

While prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails, *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006), courts have found that mere isolated incidents of interference without evidence of an improper

Mar. 4, 2022 Mem. Op. at 17–19. While the court gave William-Whitfield an opportunity to cure these defects, the allegations in the second amended complaint fail to do so. For instance, in his current iteration of the incident with the mail, John Doe #1 allegedly put William-Whitfield's mail in a toilet and began to flush while C/O Crawford watched. *See* Doc. No. 14 at ECF p. 2. Because William-Whitfield again alleges only an isolated incident of interference with his mail and does not even identify the mail as legal mail, the claim is implausible and the court will again dismiss it.

William-Whitfield also describes an incident possibly involving C/O Crawford and two John Does that allegedly resulted in his being handcuffed, pulled and pushed, and being made to sit inside his cell. He also describes a possibly separate "unlawful restraint" incident but fails to identify any specific defendant involved with this allegation. The court has interpreted these allegations as an attempt to assert excessive use of force claims.

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees like William-Whitfield. *See Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 193–94 (3d Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). To state a due process violation based on excessive

---

motive, are insufficient to establish a First Amendment violation, *see, e.g.*, *Nixon*, 501 F. App'x at 178 ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation." (footnote and citations omitted)); *Beese v. Liebe*, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997) ("We agree with other circuits that an isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." (alteration in original) (citations and internal quotation marks omitted)). Although William-Whitfield vaguely alleges interference with his legal mail, he includes no allegations that the interference was part of a pattern and practice. Without at least a modicum of factual specificity on this point, the court must conclude that William-Whitfield has failed to state a plausible claim of interference with legal mail under the First Amendment arising from the isolated incident described in the amended complaint. Mar. 4, 2022 Mem. Op. at 17–19.

force, a detainee must allege facts to suggest plausibly "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). When determining the objective reasonableness of the force used,

> [c]onsiderations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397 (citation omitted). This list is not exclusive. *See id.*

William-Whitfield's allegation of excessive force is implausible. To the extent that C/O Crawford and the two John Does were even involved in the incidents, his assertion that he was pulled and pushed while handcuffed, and made to sit inside his cell, fails to provide sufficient factual context from which the court could plausibly infer that the level of force used was objectively unreasonable. His possibly separate "unlawful restraint" allegation is conclusory and fails to identify any specific defendant involved with this incident. It too is therefore implausible. *See Rode v. Dellarciprete*, 845 F. 2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Accordingly, the court will dismiss any excessive force claims against C/O Crawford and John Does #1-2.

## III.   CONCLUSION

For the foregoing reasons, the court will dismiss all claims in the second amended complaint. As this is William-Whitfield's second opportunity to cure the defects in his claims, and he has failed to correct them in anyway whatsoever, the court concludes that further amendment

would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Tramp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *see also Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that district court should provide *pro se* plaintiff with leave to amend unless amending would be inequitable or futile).

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.